**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: HEALTH GORILLA, INC., DATA BREACH LITIGATION** | **MDL NO. _____** |

**BRIEF OF LAW IN SUPPORT OF MOTION OF DEFENDANT HEALTH GORILLA, INC.'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Pursuant to 28 U.S.C. § 1407 and J.P.M.L. Rule 6.2, Movant Defendant Health Gorilla, Inc. ("Defendant" or "Movant"), through their counsel Wilson Elser Moskowitz Edelman & Dicker LLP, respectfully moves the Judicial Panel on Multidistrict Litigation for an Order transferring the pending actions[1] listed in the Schedule of Actions (collectively, the "Related Actions"), as well as any tag-along cases subsequently filed, to the United States District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings before the Honorable Judge K. Michael Moore, before whom plaintiffs in five of the eleven originally filed complaints for the Related Actions was consolidated and remains pending.

## INTRODUCTION

All of the Related Actions subject to this motion arise from one common nucleus of operative facts:[2] Epic Systems Corporation's ("Epic") allegations of unauthorized disclosure of certain patient records to certain third-parties for which Health Gorilla had granted them access

---

[1] As detailed herein, at least eleven (11) actions were filed against Health Gorilla, Inc. and/or other defendants arising from the Data Breach, of which: two (2) cases are currently pending in the Central District of California; two (2) actions are pending in the Western District of Michigan (with a pending motion to consolidate pending); five (5) actions were filed in the Southern District of Florida which have since been consolidated; and two (2) actions were filed in the Western District of Wisconsin (with one action having been voluntarily dismissed).

[2] Health Gorilla does not, by filing this Motion, concede or admit any of the allegations asserted in the above-referenced Related Actions and expressly reserves all defenses and objections. Any factual recitation herein is derived solely from the allegations contained in the Related Actions and is presented exclusively for purposes of demonstrating that the statutory criteria for centralization under 28 U.S.C. § 1407 are satisfied.

into healthcare interoperability systems, as identified in Epic's lawsuit filed on January 13, 2026

("Data Breach").[3] Patients subsequently filed numerous data breach class actions against Health

Gorilla and other defendants arising from the alleged unauthorized disclosure of their personally

identifiable information ("PII") and/or protected healthcare information ("PHI") in the alleged

Data Breach. To date, at least eleven Complaints have been filed against Health Gorilla in four

federal districts, as set out in the attached Schedule of Actions (the "Actions") and listed below:

1. **Central District of California**

    a. *Steven Patterson v. UVA Health, Epic Systems Corporation, Health Gorilla, and Mammoth Path Solutions, LLC,* Case No. 2:26-cv-01938 (C.D. Cal.) (February 23, 2026) (filed 2/23/2026)

    b. *Edward Fox and Suzanne Bryan v. Epic Systems Corporation, Reid Hospital & Health Care Services, Inc., Health Gorilla, Inc., and Mammoth Path Solution, LLC,* Case No. 2:26-cv-04678-FMO-MAR (C.D. Cal.) (filed 4/30/2026)

2. **Eastern District of Michigan**

    c. *Jeffrey S. Jackson v. Trinity Health Corporation and Health Gorilla Inc.,* Case No. 4:26-cv-10948-SDK-KGA (E.D. Mich.) (filed 3/20/2026)

    d. *Justina Pabon v. Trinity Health Corporation and Health Gorilla, Inc.,* Case No. 4:26-cv-10989-LJM-CI (E.D. Mich.) (filed 3/24/2026)

3. **Southern District of Florida**[4]

    e. *Ricky Lott, et. al. v. Health Gorilla, Inc.,* Case No. 1:26-cv-21639 (S.D. Fla.) (filed 3/12/2026)

    f. *Holly Hughes, et. al., v Gorilla, Inc.,* Case No. 1:26-cv-21952 (S.D. Fla) (filed 3/24/2026) – consolidated into Case No. 1:26-cv-21639 (S.D. Fla.).

    g. *Amy Hawkins and Randall Brink, et. al., v. Health Gorilla, Inc.; RavillaMed PLLC; Unique Medi Tech LLC d/b/a/ Mammoth Dx; Mammoth Rx, Inc.; Unit 387 LLC; SelfRx, LLC d/b/a Myself.Health; and Critical Care Nurse*

---

[3] The Plainitffs in each Related Action rely on allegations set forth in *Epic Systems Corporation, et. al. v. Health Gorilla, Inc., et. al.*, 2:26-cv-00321 (C.D. Cal.) (filed 1/13/2026).

[4] All actions filed in the Southern District of Florida were consolidated into Case No. 1:26-cv-21639-KMM (S.D. Fla.) before the Honorable Judge Moore.

*Consultants, LLC d/b/a GuardDog Telehealth,* Case No. 1:26-cv-22328-KMM (S.D. Fla.) (filed 4/03/2026) - consolidated into Case No. 1:26-cv-21639 (S.D. Fla.)

h.   *Judi Delis, et. al.,v. Health Gorilla Inc. and Trinity Health Corporation,* Case No. 1:26-cv-22178-RS (S.D. Fla.) (filed 3/30/2026) - consolidated into Case No. 1:26-cv-21639 (S.D. Fla.)

i.   *Tatyana Malenkovich v. Health Gorilla, Inc.,* Case No. 1:26-cv-22757-KMM (S.D. Fla.) (filed 4/21/2026) – consolidated into Case No. 1:26-cv-21639 (S.D. Fla.)

4.   **Western District of Wisconsin[5]**

j.   *Pricilla Banh v. Epic Systems Corporation and UCSF Health Community Hospitals*, Case No. 3:26-cv-00216-amb (W.D. Wis.) (filed 3/13/2026)

k.   *Edgar Beaudreau v. Epic Systems Corporation and UMass Memorial Health Care, Inc.*, Case No. 3:25-cv-00215-amb (W.D. Wis.).[6]

Each of the Related Actions was filed as a putative class action on behalf of overlapping nationwide classes of patients whose PII/PHI was allegedly accessed without proper authorization in the alleged Data Breach. Thus, there is a compelling need to establish uniform and consistent standards in conducting pretrial discovery and motion practice, and to avoid potentially inconsistent rulings, inefficiencies, and waste of the parties' and judicial resources that would result if the Related Actions were allowed to proceed in numerous district courts. This is the sort of case that this Panel has routinely consolidated. This Panel has previously recognized that centralization was proper where, like here, there are multiple defendants entwined in an alleged large data breach. *In re Am. Med. Collection agency, Inc., Customer Data Sec. Breach Litig.*, 410

---

[5] While Health Gorilla is not a named defendant in the Wisconsin cases, they arise from the same Data Breach, include the same legal theories, and assert the same overlapping nationwide class as in the Related Action. As with the other Related Actions, these actions also rely on the same allegations set forth in *Epic Systems Corporation, et. al. v. Health Gorilla, Inc., et. al.*, 2:26-cv-00321 (C.D. Cal.) (filed 1/13/2026) and include virtually identical allegations about Epic's Health Information Exchange and the Role of Health Gorilla. For example, *compare* Bahn Complaint, ¶¶ 34-38 (Case No. 3:26-cv-00216-amb, Doc No. 1); Beaudreau Complaint, ¶¶ 34-38 (Case No. 3:26-cv-00216-amb, Doc No. 1) *with* Fox Complaint, ¶¶ 39-43 (Case No. 2:26-cv-04678-FMO-MAR, Doc No. 1).
[6] This action was voluntarily dismissed on April 30, 2026, and, therefore, is not included in the Schedule of Actions.

F. Supp. 3d 13560, 1353 (J.P.M.L. 2019) (ordering transfer and centralization, recognizing that "a single, mu8lti-defendant MNDL" is "necessary to ensure the just and efficient conduct of this litigation").

Prior to filing this motion, Movant's counsel conferred with counsel in the Related Actions to discuss whether alternatives to centralization—including seeking transfer under 28 U.S.C. § 1404 to a single district court or pursuing informal coordination—could be accomplished. Despite numerous conferences between and among counsel in the Related Actions over the past month, the parties could not all agree to transfer all Related Actions to one district court, and could not agree to informal coordination of the cases given the overlapping claims and classes. Based on the scope of the alleged data breach as described in the lawsuits, the alleged number of potentially impacted patients consists of possibly hundreds of thousands of individuals. Moreover, due to the extensive press coverage and ongoing litigation involving Health Gorilla, Movant anticipates that additional class actions will soon commence in other federal courts arising from the same alleged Data Breach with similar claims on behalf of the same nationwide class.

**BACKGROUND**

Healthcare interoperability frameworks allow participating organizations to access patient records, including for treatment purposes. There are two primary national frameworks responsible for more than a billion patient-record exchanges each month: (1) the Trusted Exchange Framework and Common Agreement ("TEFCA"), a federally sponsored interoperability framework created by Congress through the Century Cures Act; and (2) "Carequality," a healthcare interoperability framework in which Epic Systems Corporation ("Epic"), an EHR developer, was a founding member. All participating organizations seeking access to patient records through these networks

must agree to the contractual terms and conditions of TEFCA and Carequality, which require that participants are properly authorized to access patient records.

Health Gorilla is a Delaware corporation with its principal place of business at 121 Alhambra Plaza Suite 1000, Coral Gables, Florida 33134. Health Gorilla operates as a Qualified Health Information Network ("QHIN") under TEFCA, and as an "Implementer" under the Carequality framework. As a QHIN and Implementer, Health Gorilla has certain responsibilites regarding onboarding of entities to these frameworks that will have access to participating users' patient records. Health Gorilla is a common defendant in the Related Actions, all filed since February of this year and now proceeding across at least three jurisdictions, which all allege that, from 2001 to at least December 2025, Health Gorilla onboarded multiple entities to the Carequality and TEFCA frameworks without proper vetting and, as such, facilitated unauthorized access to patient records and for illicit commercial gain. Plaintiffs allege the unauthorized access to at least 300,000 patients, but Plaintiffs contend this figure does not account for patients impacted by unauthorized access to their records using other electronic health record systems or from the U.S. Department of Veterans Affairs. At this time, it is unknown how many more similar lawsuits will be filed.

Plaintiffs allege the patient records include clinical care details, demographic data, insurance information, and, in some cases, driver's license numbers. Plaintiffs further allege this type of information can be exploited to facilitate identity theft, insurance fraud, medical identity fraud, and other criminal activity. Plaintiffs' claims against Health Gorilla include negligence, negligence *per se* (based on alleged violations of the FTCA and HIPAA), breach of implied contracts, invasion of privacy/intrusion upon seclusion, unjust enrichment, and breach of the implied covenant of good faith and fair dealing.

## <u>ARGUMENT</u>

Multidistrict litigation is designed "to promote the just and efficient conduct' of 'civil actions involving one or more common questions of fact' that are pending in different districts." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 460 F.3d 1217, 1229 (9th Cir. 2006) (quoting 28 U.S.C. § 1407(a)). Transfer is appropriate where it will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. Upon receiving a motion to transfer, the Panel "analyzes each group of cases in light of the statutory criteria and the primary purposes of the MDL process to determine whether transfer is appropriate." *In re PPA Prods. Liab. Litig.,* 460 F.3d at 1230. Four factors help determine whether transfer will facilitate the convenience of the parties and promote the just and efficient conduct of the transferred case: (1) elimination of duplicative discovery; (2) avoidance of conflicting rulings and schedules; (3) reduction of litigation costs; and (4) conservation of the time and effort of the parties, attorneys, witnesses, and courts. Manual for Complex Litigation (Fourth) § 20.131, at 219. To that end, centralization is appropriate to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel, and the judiciary. *See, e.g., In re Proven Networks, LLC, Pat. Litig.,* 492 F. Supp. 3d 1338, 1340 (J.P.M.L. 2020) (noting those factors in ordering consolidation).

Here, the Related Actions all arise from several common questions of fact and law. Accordingly, there is a strong need to establish uniform and consistent standards for pretrial discovery and motion practice, while avoiding potentially inconsistent rulings, inefficiencies, and the unnecessary expenditure of party and judicial resources that could result if these Actions were permitted to proceed in multiple district courts.

**A.  The Related Actions and Any Tag-Along Actions Are Appropriate for Transfer and Coordination Pursuant to 28 U.S.C. § 1407.**

Transfer and coordination are permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and this Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION, 20.131, at 220. Transfer and coordination for pretrial proceedings would achieve those objectives in the Related Actions and is, therefore, appropriate here.

### 1.  The Related Actions Involve One or More Common Questions of Fact

Transfer is appropriate here because the Related Actions share common issues of fact and law and are in the early stages of litigation. Commonalities in factual and legal questions need not be complete, nor even the majority, to merit transfer. *In re Katz Interactive Call Processing Pat. Litig.,* 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007). "[I]ndividualized factual issues" do not "negate the efficiencies to be gained by centralization." *In re Nat'l Prescription Opiate Litig.,* 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017). The claims in each of the Related Actions arise from the same operative facts and have the same factual questions in common, including, but not limited to:

a.  whether Health Gorilla granted third-parties unauthorized access to patient records of Plaintiffs' and class members;

b.  whether Plaintiffs' and class members' PII and/or PHI was accessed without authorization;

c.  did Health Gorilla owe a duty to Plaintiffs and class members to exercise reasonable care in obtaining, securing, protecting, and safeguarding their patient records, and whether any such duty was breached;

7

d.  Health Gorilla's investigation and response to the alleged unauthorized access to patient records of Plaintiffs' and class members;

e.  did Health Gorilla owe a duty to  Plaintiffs and class members to have procedures in place to detect and prevent any alleged improper access or misuse of Plaintiffs' and Class Members patient records, and whether any such duty was breached;

f.  whether Plaintiffs and Class Members suffered legally cognizable damages as a result of any alleged unauthorized access of their patient records, and, if so, in what amounts; and

g.  whether Plaintiffs and class members are entitled to injunctive or declaratory relief.

Additionally, all Related Actions rely upon similar legal theories of recovery, each turning on Health Gorilla's alleged failure to prevent unauthorized access to patient records. Specifically, all Related Actions assert the same and/or overlapping causes of action for negligence, breach of implied contracts, breach of implied covenant of good faith and fair dealing, unjust enrichment and/or injunctive/declaratory relief.

As the Panel has consistently recognized, centralization is appropriate in the context of data breach actions because where "all actions stem from the same data breach," discovery across all actions will address exactly these questions, including "how and when [the breach] was identified, what security measures [defendant] had in place for securing patient data, and what steps it took after discovery of the breach." *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016); see also *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) ("The factual overlap among these actions is substantial, as they all arise from the same data breach, and they all allege that [defendant] failed to put into place reasonable data protections."); *In re Uber Techs., Inc., Data Sec. Breach Litig.*, 304 F. Supp. 3d 1351, 1353 (J.P.M.L. 2018) ("Common factual questions are presented with respect to [defendant's] practices in safeguarding its users' personal information,

8

the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 223 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016) ("Common factual questions are presented with respect to Yahoo's practices in safeguarding its user' personal information, the investigation into the breach, the alleged delay in disclosing the breach, and the nature of the alleged damages."). Given the substantial factual overlap across the Related Actions, centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

### 2. Transfer and Coordination of the Related Actions to the Southern District of Florida Will Further the Convenience of the Parties and Witnesses

Centralization under 28 U.S.C. § 1407 is proper when it will "serve the convenience of the parties and witnesses and promote the just and efficient conduct of [the] litigation." *In re Dairy Farmers of America, Inc. Cheese Antitrust Litig.*, 626 F. Supp. 2d 1348 (J.P.M.L. 2009). Centralization is appropriate where it will "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." MANUAL FOR COMPLEX LITIGATION, § 20.131, at 220.

Here, Health Gorilla and each co-defendant will likely raise the same discovery objections and seek the same protective orders or privileges in each respective case. Absent centralization and transfer, all parties will be subjected to duplicative discovery, and witnesses will face multiple, redundant depositions. See, e.g., Uber, 304 F. Supp. 3d at 1353 ("Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings, including with respect to class certification; and conserve the resources of the parties, their counsel, and the judiciary.).

9

Absent transfer, the federal court system will be forced to administer—and Health Gorilla (and its co-defendants) will be compelled to defend related Actions asserting overlapping nationwide class actions across multiple venues, all proceeding on potentially different pretrial schedules and subject to different judicial decision-making and local procedural requirements. Moreover, each Plaintiff will be required to monitor and possibly participate in each of the other similar Related Actions to ensure that Health Gorilla and co-defendants do not provide inconsistent or misleading information. Many of the same pretrial disputes are also likely to arise in each Related Action. Likewise, due to the similar causes of action in each complaint, the defenses asserted in the Related Actions will be substantially the same, as will be the substance of any motions to dismiss and motions for summary judgment, which will be based on the same claims and based on the same arguments in each of the Related Actions. None of the pending cases have progressed to the point where efficiencies will be forfeited through transfer to an MDL proceeding – each Related Action is in its infancy.

While undersigned counsel anticipates there will be additional case filings, the current level of litigation – five pending Related Actions in three separate District Courts – would benefit from transfer and coordinated proceedings, given the allegations of these complaints. *In re Equifax, Inc., Customer Data Sec. Breach Litig*., 289 F. Supp. 3d 1322, 1324 (J.P.M.L. 2017) (finding that "centralization under Section 1407 … will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation"); *see also In re First Nat. Collection Bureau, Inc., Tel. Consumer Prot. Act (TCPA) Litig.,* 11 F. Supp. 3d 1353, 1354 (J.P.M.L. 2014) ("[E]fficiencies can be gained from having these actions proceed in a single district," such as "eliminat[ing] duplicative discovery; prevent[ing] inconsistent pretrial rulings … and conserv[ing] the resources of the parties, their counsel and the judciary."]; *In re Zurn Pex Plumbing Prods.*

*Liab. Litig.*, 572 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008) (granting transfer and consolidation of three cases and six potential tag-alongs because of the "overlapping and, often, nearly identical factual allegations that will likely require duplicative discovery and motion practice").

In sum, transfer and coordination of the Related Actions to a single federal district will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefits of all litigations, third parties, and the court. *See In re Enfamil Lipil Mktg. & Sales Pracs. Litig.,* 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011).

### 3. Coordination Will Promote the Just and Efficient Conduct of the Related Actions

Centralization will "promote the just and efficient conduct of [the] actions" because the Related Actions will likely involve many of the same pretrial issues concerning the nature and scope of discovery and the sufficiency of plaintiffs' allegations. *See* 28 U.S.C. 1407(a). Discovery will be more effectively and efficiently managed, while the resources of the parties, attorneys, and judicial system are conserved. Coordination is therefore necessary to prevent inconsistent pretrial rulings on many central issues, which would present substantial problems because of the consistency in factual and legal allegations between the Related Actions. *See In re LLRice 601 Contamination Litig.,* 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006).

Centralization is necessary to prevent inconsistent pretrial rulings on many central issues, which would present significant problems due to the substantial consistency in factual and legal allegations among all Related Actions. *Id.* (observing that centralization would "prevent inconsistent pretrial rulings" on class certification and other issues). The prospect of inconsistent rulings also encourages forum and judge shopping (including, for example, manipulation of non-congruent discovery limits, approaches to electronically stored information, and protective order

11

issues). By contracts, a single MDL judge coordinating pretrial discovery and ruling on pretrial motions in all of these federal cases at once will help reduce witness inconvenience, the cumulative burden on the courts, and the litigation's overall expense, as well as minimizing this potential for conflicting rulings. *Id.* Centralization will mitigate these problems by enabling a single judge to manage discovery and the parties to coordinate their efforts. *Am. Med. Collection Agency, Inc.,* 410 F. Supp. 3d at 1353 ("[A] single MDL encompassing [multiple defendants] is necessary to ensure the just and efficient conduct of this litigation."). This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See Id.* at 1354 ("centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation"); *Enfamil,* 764 F. Supp. 2d at 1357 ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses."); *In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig*., 109 F. Supp. 3d 1382, 1383 (J.P.M.L. 2015) ("Centralization will … conserve the resources of the parties, their counsel and the judiciary.").

### 4. Centralization Under § 1407 Is Appropriate Given the Number of Related Actions and District  Courts at Issue

Centralization is particularly appropriate given he number of related Actions pending in three federal courts. Although Health Gorilla does not know whether or how many additional actions will be filed, given the number of Related Actions and the number of differing federal district courts, § 1407 transfer is a useful and appropriate way to get in front of subsequent tag-along actions. *See In re Airline Baggage Fee Antitrust Litig*., 655 F. Supp. 2d 1362, 1363 (J.P.M.L. 2009) ("In light of the very large number of individuals affected by the fees in questions, the possibility of additional actions arising in other districts (with ensuing duplicative Section 1404(a)

12

motion practice) looms."). Here, there are at least eleven Related Actions that were filed in four separate district courts. Notably, while Health Gorilla is not a named defendant in the two actions that were filed in the Western District of Wisconsin,[7] they stem from the same nucleus of facts, include the same legal theories, and assert the same overlapping nationwide classes as in the Related Actions.

Consolidation could also potentially permit both Plaintiffs' and Defendants' counsel to coordinate efforts and share the pretrial workload among the various and numerous counsels working on this matter. Instead of different law firms pursuing different litigation strategies and engaging in duplicative discovery and motion practice, a coordinated team of attorneys can pursue the claims in one court, before one judge, preserving both Plaintiffs' and Defendants' resources and allowing their attorneys to work together in common to further these cases. The Panel has previously endorsed this rationale, noting that "prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of case and a minimum of inconvenience to all concerned." *In re Baldwin-United Corp. Litig.,* 581 F. Supp. 739, 741 (J.P.M.L. 1984).

Additionally, pretrial centralization will enable Defendants to concentrate their attention and discovery efforts in one federal forum, rather than numerous district courts throughout the country. As a result, Defendants will be able to move quickly and effectively through discovery, enhancing the overall efficiency of the litigation. *See In re Apple iPhone 3G Prod. Liab. Litig.*, 630 F. Supp. 2d 1382, 1383 (J.P.M.L 2009) (noting efficiency obtained through MDL process). Rather than conducting general discovery in at least three different district courts, written discovery and depositions of key witnesses can

---

[7] *See Priscilla Banh v. Epic Systems Corporation and UCSF Health Community Hospitals*, 3:26-cv-00216-amb (W.D. Wis.) (filed 3/13/2026) and *Edgar Beaudreau v. Epic Systems Corporation and UMass Memorial Health Care, Inc.*, 3:26-cv-00215-amb (W.D. Wis.) (filed 3/13/2026).

be coordinated and completed just once. This ability to streamline the work of discovery and coordinate efforts among counsel will serve the interests of justice.

MDL treatment will enable a single court to establish a pretrial plan that will minimize the inconvenience and expenses of litigating numerous cases separately, which is precisely the purpose of transfer and coordination under Section 1407. Transferring the Actions for pretrial coordination will make this litigation far more efficient and convenient for all involved. One court overseeing these actions will allow the judiciary to conserve limited resources. If transfer is denied, however, the Actions and tag-along cases will proceed on independent tracks in at least three different districts, requiring duplicative discovery, including repeated depositions of the same corporate personnel and expert witnesses, risking inconsistent rulings and wasting resources. Now is the optimal time to coordinate these matters for the convenience of the parties and witnesses and to ensure the just and efficient resolution of the Actions and similar cases yet to be filed. Consolidation by this Panel will avoid the waste of duplicative discovery and the risk of inconsistent rulings, resulting in conservation of judicial and party resources. Taken collectively, these factors establish that the Actions are appropriate for coordination under 28 U.S.C. § 1407.

b. **The Southern District of Florida Is Well-Suited, Efficient, and a Convenient Forum for this MDL**

Pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation (JPML) is authorized to transfer civil actions involving common questions of fact to a single district "for coordinated or consolidated pretrial proceedings." As discussed throughout this motion, the key criteria for consolidation include the convenience of the parties and witnesses and the promotion of the just and efficient conduct of the litigation. In the present litigation involving Health Gorilla, the Southern District of Florida is the most suitable and logical venue for centralization.

Under 28 U.S.C. § 1407(a):

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings...for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

Relevant factors considered by the JPML include:

- Location of witnesses and evidence;

- Judicial experience with similar cases;

- The nexus between the forum and the factual issues;

- The number and concentration of actions already pending in that district; and

- Resources and docket conditions of the district.

*See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017), *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 289 F. Supp. 3d 1322 (J.P.M.L. 2017).

First, The Health Gorilla litigation has a clear geographic nexus. Health Gorilla, Inc., the common defendant named in every Related Action, maintains its principal place of business at 121 Alhambra Plaza Suite 1000, Coral Gables, Florida 33134—squarely within the Southern District of Florida. *See In re Diisocyanates Antitrust Litig.*, 341 F. Supp. 3d 1376, 1378 (J.P.M.L. 2018 (finding transfer to the Western District of Pennsylvania appropriate where one defendant was located in Pennsylvania and five other defendants had their headquarters adjacent or nearby).

Additionally, the Southern District of Florida is the forum where the greatest number of related actions were initially filed. Those actions have since been consolidated into *Lott v. Health Gorilla, Inc.*, Case No. 1:26-cv-21639, such that substantial litigation is already underway in this court. The assignment of multiple related actions to a single judicial officer further supports selection of the Southern District of Florida as the transferee forum. The Panel has consistently selected as the transferee forum the district the greatest concentration of related actions exists when a clear nexus is present. See *In re Epipen (Epinephrine Injection, USP) Mktg., Sales Practices &*

15

*Antitrust Litig.*, 268 F. Supp. 3d 1353, 1355 (J.P.M.L. 2017) ("We generally select a transferee district where a number of actions are already pending.").

Moreover, docket conditions in the Southern District of Florida further support centralization there. The district possesses substantial judicial resources and is well-equipped to manage multidistrict litigation of this complexity and scope. *See In re Lending Tree, LLC, Customer Data Sec. Breach Litig.*, 581 F. Supp. 2d 1367, 1368 (J.P.M.L. 2008) (finding transfer appropriate where a district has the capacity to manage the docket and has previously served as a suitable transferee forum).

Lastly, the Southern District of Florida is located in Miami, Florida, which is a readily accessible forum that has multiple major airports—including Miami International Airport and Fort Lauderdale-Hollywood International Airport—making it convenient for counsel and parties traveling from other jurisdictions across the country. *See In re Sonic Corp. Customer Data Sec. Breach Litig.,* 276 F. Supp. 3d 1382, 1383 (J.P.M.L. 2017) (where the Northern District of Ohio was selected as transferee district because they were a centrally located and easily accessible location despite other Districts having more pending actions).

### III. CONCLUSION

For the foregoing reasons, Movant Defendant Health Gorilla, Inc. respectfully requests that the Judicial Panel on Multidistrict Litigation grant its motion and transfer the Related Actions listed in the attached Schedule of Actions, as well as any future tag-along actions, to the Southern District of Florida before the Honorable K. Michael Moore. Centralization in that forum will promote the just and efficient conduct of the litigation by eliminating duplicative discovery, avoiding inconsistent pretrial rulings, reducing litigation costs, and preserving judicial and party resources.

16

**Dated: May 27, 2026**                    **Respectfully submitted,**

**WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP**

**/s/** Anjali Das
Anjali.das@wilsonelser.com
/s/ Jennifer Stegmaier
Jennifer.stegmaier@wilsonelser.com
**1**61 N. Clark St. – Suite 4500
Chicago, IL 60601
312.704.0550 (Main)
312.704.1522 (Fax)
*Attorneys for Defendant Health
Gorilla, Inc.*

17