**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: HEALTH GORILLA, INC., ET AL., DATA SECURITY BREACH LITIGATION** | MDL DOCKET NO.: 3193 |

<u>**PLAINTIFF HOLLY HUGHES' RESPONSE IN OPPOSITION TO DEFENDANT HEALTH GORILLA INC.'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**</u>

Plaintiff Holly Hughes ("Plaintiff") opposes Defendant Health Gorilla, Inc.'s ("Defendant") Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 ("Motion"). As demonstrated herein, Defendant has not met its burden of showing that centralization under section 1407 is necessary or appropriate.

**INTRODUCTION**

The actions at issue do not arise from a single, uniform data breach or even a centralized scheme directed by a single actor. Rather, when considered collectively, the complaints reflect a fragmented set of allegations involving multiple defendants, multiple forms of conduct, and multiple alleged data access events occurring through a layered healthcare interoperability ecosystem.

The ten cases Defendant seeks to consolidate and transfer are not in any sense uniform. Rather, the cases fall into three materially different buckets: (A) Health Gorilla-only (the Southern District of Florida cases); (B) actions against a Hospital, Health Gorilla, and Epic (the Central District of California and Eastern District of Michigan Cases); and (C) cases against Epic and a Hospital only (where Health Gorilla is not a party) (Western District of Wisconsin cases). Accordingly, these are not the same cases with different captions—they assert *different* liability theories against *different* actors. Accordingly, the Actions identified in Defendant's motion span

1

multiple jurisdictions and include materially different configurations of defendants and claims, including some in which Health Gorilla is not a defendant *at all*.

Moreover, the alleged "event" is not uniform across the complaints. Instead, the allegations describe multiple instances in which third parties purportedly obtained patient data through requests made within the interoperability frameworks. Across complaints, plaintiffs alternately allege, by way of example: (i) improper onboarding and vetting (against Health Gorilla), (ii) improper access authorization (against Health Gorilla and Epic); (iii) deficiencies in the system design and operation (against Epic); (iv) improper failure to safeguard patient data and improper disclosure of such data (against the hospital defendants); or (v) downstream misuse / resale by third parties (against Trinity Health and Health Gorilla). These differences are not merely formal. They define the substantive issues in each case, including the nature of each defendant's duties, the conduct at issue, and the evidence required to establish liability.

Defendant wrongly implies that this litigation presents a classic hub-and-spoke structure with Health Gorilla at the center. Mot. at 1-2. That implied characterization is inaccurate. In a traditional hub-and-spoke model, a central actor (the "hub") directs or controls a uniform course of conduct across multiple related actors (the "spokes"), such that the core liability issues are common and centralized. That is not what the complaints allege here. Instead, the complaints reflect a distributed and multi-layered system in which different actors play independent roles, including: (i) Health Gorilla, as an intermediary platform participant; (ii) hospitals and healthcare providers, as data custodians; (iii) Epic Systems, as an interoperability framework participant; and (iv) third-party requestors, as independent entities submitting data access requests.

In this structure, as alleged, Health Gorilla does not act as a central decision-maker controlling all data disclosures. Rather, hospitals retain responsibility for their own data governance and disclosure obligations. Epic's systems operate as a separate layer governing

interoperability. Finally, third-party entities independently initiate access requests and allegedly engage in their own misconduct. At most, Health Gorilla is one participant within a broader ecosystem—not a controlling "hub" that unifies the factual and legal issues across all cases. In some actions it seeks to consolidate, it is not even a defendant *at all*. Thus, rather than a hub-and-spoke model, the litigation more closely resembles a network of independent interactions among multiple actors, each giving rise to distinct factual questions.

Finally, the litigation is in its early stages. In the Southern District of Florida, multiple actions against Health Gorilla have been consolidated into a single proceeding, rendering Defendant's arguments about duplicative discovery and efficiency moot. The limited number of additional actions pending in other districts involving different defendants and different claims, and there is no need to consolidate those cases with the Florida proceedings.

## FACTUAL BACKGROUND

Defendant is a liaison in two "national frameworks responsible for more than a billion patient-record exchanges between healthcare industry participants every month." *Lott v. Health Gorilla, Inc.*, No. 1:26-cv-21639, ECF No. 50, ¶ 2. In this role, Defendant collected highly sensitive personal identifiable information ("PII") and protected health information ("PHI") (collectively "Private Information") from millions of patients. The Related Actions arise out of multiple unauthorized data disclosures allegedly enabled by Defendant in which certain of Defendant's customers fraudulently obtained electronic patient records and use or sell the records for profit and commercial exploitation ("Data Disclosures"). *See id.* ¶ 3.

There are ten Related Actions named in the Motion, with five of the ten pending in the Southern District of Florida. ECF No. 1. Those have already been consolidated and are now pending against Defendant only. The other five cases are pending in three Districts against particular hospitals and Epic Systems Corporation ("Epic"), and only some name Defendant.

In the Southern District of Florida, on April 21, 2026, the Honorable K. Michael Moore consolidated Plaintiff's case into the first-filed case *Lott v. Health Gorilla, Inc.*, No. 1:26-cv-21639, and appointed interim co-lead class counsel. *Lott*, ECF No. 27. On April 28, 2026, and May 14, 2026, the remaining three Related Actions pending in the Southern District of Florida were consolidated into *Lott*. *Id.*, ECF Nos. 30, 46. On May 20, 2026, the Plaintiffs in the consolidated *Lott* action filed a Consolidated Class Action Complaint. *Id.*, ECF No. 50.

On May 14, 2026, the Parties in *Lott* met and conferred under Rule 26(f) and discussed proposed deadlines in the consolidated case. Defendant proposed staying the case pending consolidation of the other Related Actions pending outside the Southern District of Florida. Plaintiffs responded that effort was making progress, but that we still needed to proceed with the *Lott* case. On May 20, 2026, by email, Defendant notified Plaintiffs for the first time of their intent to move for an MDL. On May 21, 2026, in order to streamline the action, Plaintiffs noticed the voluntary dismissal without prejudice of the other defendants named in the underlying cases in that District arising out of the same data breach. *Id.*, ECF No. 53. That same day, Plaintiffs and Defendant filed their Joint Scheduling Report, in which Plaintiffs proposed deadlines and Defendant posited all scheduling is premature given its intent to file a § 1407 motion to transfer. *Id.*, ECF No. 53. On May 22, 2026, Judge Moore struck the Joint Scheduling Report and ordered Defendant file a motion to stay regarding its contemplated § 1407 motion by May 27, 2026. *Id.*, ECF No. 55.

All the Related Actions were expeditiously moving forward and do not require § 1407 transfer. The Motion is a waste of the Panel's resources and is the classic "solution in search of a problem." Rather, the *Lott* case is already situated where discovery and court proceedings will be most convenient for the parties and allow for the most efficient resolution of the claims against Defendant. Further, the remaining Related Actions in the absence of informal coordination could

4

proceed against the hospitals or against Epic without a risk of inconsistent adjudications because the hospitals' and/or Epic's liability are separate questions from Defendant's own liability.

Defendant's Motion rests on a flawed premise that this litigation arises from a single, unitary "data breach." It does not. The Related Actions instead involve alleged unauthorized access to patient records by *different* third parties, at *different* times, through *different* healthcare entities, and under *different* contractual and operational circumstances within interoperability frameworks. Those differences drive defendant-specific duties, knowledge, causation, and defenses. As a result, this case does not resemble the typical "single intrusion into a centralized system" scenario that has supported centralization in other data-breach MDLs. Rather, it presents the type of distributed, defendant-specific issues that the Panel has held are better managed through coordinated proceedings short of centralization.

**ARGUMENT**

Under 28 U.S.C. § 1407, cases should be centralized into an MDL only when "necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of this litigation." *In re Alteryx, Inc., Customer Data Sec. Breach Litig.*, 291 F. Supp. 3d 1377, 1378 (J.P.M.L. 2018). However, Defendant's Motion has nothing to do with the convenience to the parties or witnesses, or the interests of efficiency and justice.

In addition, the Panel "ha[s] emphasized that 'centralization under Section 1407 should be the last solution after considered review of all other options.'" *Id*. (quoting *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1377-78 (J.P.M.L. 2011)).

The Panel should deny Defendant's Motion because, as discussed below in Part I: (A) this litigation does not arise from a single, unitary "data breach"; (B) the questions common to the actions are not so complex as to require centralization; (C) discovery specific to each individual

defendant outweighs any common discovery needed from Defendant; and (D) readily available less complex alternatives to centralization exist.

## I.   DEFENDANT HAS NOT MET ITS "STRONG BURDEN" OF DEMONSTRATING THAT CENTRALIZATION IS WARRANTED.

The Panel has long recognized that "[w]hen only a minimal number of actions are under consideration for transfer under Section 1407," as they are here, "the moving party bears a strong burden to show that the common questions of fact are so complex and the accompanying discovery so time-consuming as to serve the overall convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re Com. Lighting Prods., Inc. Contract Litig.,* 415 F. Supp. 392, 393 (J.P.M.L. 1976). The Panel has repeatedly applied this principle to deny centralization in other data breach litigation. *See, e.g.*, *In re Stockx Customer Data Sec. Breach Litig.*, 412 F. Supp. 3d 1363, 1364 (J.P.M.L. 2019); *In re First Am. Fin. Corp. Customer Data Sec. Breach Litig.*, 396 F. Supp. 3d 1372, 1372-73 (J.P.M.L. 2019);  *In re SLB Enterprise Rico Litig.*, 412 F. Supp. 3d 1350, 1351-52 (J.P.M.L. 2019); *In re [24]7.AI, Inc., Customer Data Sec. Breach Litig.*, 338 F. Supp. 3d 1345, 1346 (J.P.M.L. 2018); *In re Alteryx*, 291 F. Supp. 3d at 1377-78. Defendant fails to meet this heavy burden.

### A.   Defendant has not met its burden because its argument rests on a mischaracterization of the cases as arising from a single, uniform data breach

This is not a single data breach case of the type that warrants centralization. Defendant's Motion fails at the threshold because it rests on a mischaracterization of the litigation as arising from a single, uniform "data breach."  Mot. at 1-2, 3, 7. The complaints do not describe a single event giving rise to common proof. Instead, when viewed collectively, they plead distinct

categories of claims involving different defendants, different conduct, and different liability theories.

As even Defendant's own submission confirms, the actions fall into at least three materially different groups: (1) cases asserted solely against Health Gorilla; (2) cases asserted against Health Gorilla alongside hospitals and Epic Systems; and (3) cases asserted against hospitals and Epic alone, where Health Gorilla is not even a party. Mot. at 2-3 & n.5, 13. These structural differences are not superficial—they define the core liability questions in each action.

Centralization is particularly inappropriate where, as here, all actions do not even share a uniform set of defendants. Defendant's own motion acknowledges that certain actions proceed without Health Gorilla as a party. Mot. at 3 n.5, 13. This fact alone distinguishes the present litigation from typical data breach MDLs, which involve claims against a *single* defendant arising from a centralized intrusion. Instead, these actions implicate different defendants with independent duties and independent liability exposure, meaning that even threshold questions—duty, breach, causation—will vary significantly across cases. The Panel has recognized that where unique questions of fact predominate and different defendants are subject to different claims, centralization is disfavored as it does not promote efficiency. *In re Belviq (Lorcaserin HCI) Prod. Liability Litig.*, 555 F. Supp. 3d 1369, 1369-70 (J.P.M.L. 2021) ("The record before us indicates that individualized factual issues concerning causation will predominate and diminish the potential to achieve significant efficiencies in an MDL"). That principle applies with full force here.

In addition, across these complaints, liability turns on fundamentally different inquiries, including: (i) whether Health Gorilla inadequately vetted or onboarded third-party participants; (ii) whether specific hospitals improperly disclosed patient data or failed to safeguard it; (iii) whether Epic's interoperability framework permitted access without sufficient authorization controls; and

7

(iv) whether particular third-party recipients misrepresented their purpose for accessing records or misused the data after receiving it.

Despite these differences, Defendant characterizes this litigation as arising from a single "common nucleus of operative facts," Mot. at 1, 13, but that framing is inaccurate. Plaintiffs do not allege a single intrusion into a centralized Health Gorilla database. Instead, the cases involve alleged misuse of access granted through interoperability networks by different downstream actors—comprising hospitals, providers, and other entities—each with distinct relationships, onboarding processes, knowledge, and conduct.

Those distinctions are legally and factually significant. Liability will turn on, among other things, what each defendant knew about access risks, how each implemented safeguards, what data each maintained, and what actions each took in response to alleged unauthorized access. These are inherently defendant-specific inquiries that cannot be streamlined through centralized pretrial proceedings.

This case therefore differs fundamentally from the data-breach MDLs Defendant cites, which involve a single defendant's centralized system and a single breach event. Here, any common questions relating to Health Gorilla's role are limited and are already being addressed in the consolidated *Lott* proceeding. The remaining issues will turn on individualized facts specific to each non-Health Gorilla defendant, making centralization unnecessary and inefficient.

In addition, Defendant's speculation that additional actions may be filed likewise does not support centralization. Mot. at 4, 10, 12. The Panel evaluates transfer requests based on actions *actually* pending, not hypothetical future filings. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 599 (1997) ("no authority resides in the MDL Panel to license for consolidated proceedings claims not yet filed"). In addition, courts have repeatedly declined to centralize litigation where, as here, the number of existing non-consolidated actions is modest, even where additional filings are

possible. *In re Dickey's Barbecue Rests. Inc., Customer Data Sec. Breach Litig.*, 521 F. Supp. 3d 1355, 1356 (J.P.M.L. 2021) (declining to consolidate 6 actions pending in only 3 districts); *In re SLB Enterprise Rico Litigation*, 412 F. Supp. 3d at 1351-52 (declining to consolidate 6 actions pending in two districts because "only a minimal number of actions are involved"). Here, the operative reality is a single consolidated proceeding in the Southern District of Florida and a small number of additional actions involving different defendants—circumstances that weigh against centralization.

Thus, rather than a single data breach, the complaints collectively allege a series of independent data access events occurring through a network of actors, each governed by different duties and factual predicates. Any superficial overlap regarding the general functioning of interoperability systems is therefore "eclipsed" by the individualized issues that will predominate in each case—precisely the circumstance in which the Panel has declined centralization.

B.      **The Common Questions Are Not Complex Enough to Warrant Centralization.**

To the extent common questions arise in some subset of these cases, they are not complex enough to warrant centralization. "Common factual questions . . . are not the sole prerequisite for centralization under Section 1407. Centralization also must promote the just and efficient conduct of the actions." *In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, 493 F. Supp. 3d 1358, 1360 (J.P.M.L. 2020). The Panel has thus denied centralization in data breach cases even where there were common questions, if the other requirements and touchstones of Section 1407 were not met. *See, e.g., In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, 648 F. Supp. 3d 1377 (J.P.M.L. 2022); *In re Hudson's Bay Co. Customer Data Sec. Breach Litig.*, 326 F. Supp. 3d 1372, 1373 (J.P.M.L. 2018) (denying centralization even where all the parties supported it, because while there was "no dispute that these cases share factual issues arising out of a data breach involving customer payment card data at Saks Fifth Avenue, Saks OFF 5TH, and Lord & Taylor

9

stores in North America . . . centralization under Section 1407 should be the last solution after considered review of all other options") (internal quotation marks and citations omitted); *In re Alteryx,* 291 F. Supp. 3d at 1378 ("These actions share factual allegations concerning an incident in which defendant exposed and allowed unauthorized access to a database file containing sensitive consumer data. Despite the overlap in factual and legal issues among these cases, we find that Section 1407 centralization is not necessary.").

Defendant's Motion fails to persuade that common factual and legal questions and potential common defenses are so "complex" that they can *only* be resolved through a centralized proceeding. Defendant ignores that the most important legal issues (*e.g.*, each hospital defendant and Epic's legal duties as distinct from Defendant's own legal duties) in each case is defendant-specific, and so too will be the most important and time-consuming discovery (*e.g.*, each defendant's data security policies and negligent use of Defendant's services). Just like in *In re Accellion, Inc., Customer Data Security Breach Litig.*, 543 F. Supp. 3d 1372 (J.P.M.L. 2021), "any factual overlap among the actions as to [Defendant's services] [and] its vulnerability to [fraud]" will "be eclipsed by factual issues specific to each client defendant." *Id.* at 1374.

> **C.      Discovery Is Predominantly Individualized, and Discovery Needed from Health Gorilla Will Not Outweigh Discovery Specific to Other Defendants.**

The breadth of divergent allegations across the complaints confirms that discovery will be overwhelmingly defendant- and case-specific. Centralization is inappropriate where, as here, "unique questions of fact predominate over any common questions of fact." *In re Pharm. Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002).

Here, all the actions against the individual hospital defendants will turn on unique factual questions to those defendants that will predominate over any shared common questions of fact involving Health Gorilla's specific failures. For example, discovery will be unique and

particularized as to: (i) the nature of the relationship between the defendant and the data breach victims; (ii) how the Private Information was initially acquired by and entrusted to the defendant; (iii) the type and sensitivity of the Private Information stolen from the defendant; (iv) what duties the defendant owed to the victims to safeguard their Private Information; (v) whether and when the defendant knew or should have known of Defendant's vulnerabilities; (vi) whether the defendant suffered previous data security events; (vii) the quality or lack thereof of the defendant's cyber hygiene and system; (viii) when the defendant learned of the data breach at issue in the complaint; (ix) when and whether the defendant implemented mitigation steps following the data breach; (x) when (if ever) the defendant notified its patients, clients, and/or customers of the data breach and what factors influenced the decision about when to notify them of the data breach; and (xi) the individualized remedial measures appropriate for each defendant.

The hospital defendants will not be prejudiced or inconvenienced by the fact that pre-trial hearings and discovery will occur in their home jurisdictions. Centralizing the cases in one district would therefore unnecessarily complicate the discovery and pre-trial proceedings and make them *less*, not more, efficient.

Additionally, because the claims in each case will differ factually and legally based on the discovery from each particular defendant and each pending action is specific to that defendant, there is no real risk of inconsistent rulings nor inconvenience to the judiciary. *See In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 & n.2 (J.P.M.L. 2012) (denying industry-wide and bank-specific centralization because "individualized discovery and legal issues are likely to be numerous and substantial"). Discovery in the consolidated *Lott* case will elucidate all the necessary facts relating to Defendant's failures. To the extent those facts are relevant to any of the cases involving the hospital defendants, the parties will have access to them through

11

informally coordinated discovery. Accordingly, it is not necessary to centralize the cases in order to obtain those facts.

To the contrary, a multi-defendant MDL could protract proceedings and make them unnecessarily complex because of the possible need for separate discovery and motion tracks, as well as the need for additional bellwether trials. *In re CP4 Fuel Pump Marketing, Sales Practices, and Products Liability Litigation*, 412 F. Supp. 3d 1365, 1366-67 (J.P.M.L. 2019).

Defendant relies heavily on decisions such as *In re Marriott*, *Yahoo*, *Uber*, and *AMCA*, but those cases are inapposite. Each involved a single defendant's centralized information system and a discrete intrusion event, such that discovery necessarily focused on one set of security practices, one incident, and one response.

This case is more similar to *Accellion* than to *AMCA* (which Defendant cites, Mot. at 3-4, 12) or *In re: MOVEit Customer Data Sec. Breach Litig.*, 669 F. Supp. 3d 1402 (J.P.M.L. 2023). Although those cases are broadly "hub-and-spoke" data breach cases, *Accellion* involved different facts against each of the spoke Defendants regarding "configuration" of Accellion's legacy platform that "eclipsed" and factual overlap, and here the claims against the hospitals and Epic similarly have factual differences form the claims against Defendant that eclipse any overlap.

Here, the litigation involves a distributed ecosystem of actors operating within healthcare interoperability frameworks, with alleged unauthorized access occurring through multiple entities whose roles, obligations, and conduct differ materially. Discovery will not center on a single system or event, but on multiple defendants' independent practices, policies, and actions. Accordingly, this case aligns with decisions such as *Accellion*—not the cases Defendant cites—in which the Panel declined to centralize litigation arising from a vendor's product where client-specific factual issues predominated and any overlapping discovery could be coordinated informally.

Indeed, this case is *more* fragmented than *Accellion*, not less. There, the Panel declined centralization where a file-transfer platform was allegedly implicated in multiple breaches affecting different client defendants, because the "factual overlap" regarding the platform was likely to be "eclipsed by factual issues specific to each client defendant." 543 F. Supp. 3d at 1374. Here, the divergence is even more pronounced. The complaints do not merely involve different client defendants—they involve (i) different categories of defendants (platform, hospitals, and software developers); (ii) different alleged misconduct (onboarding failures, disclosure decisions, framework design, and third-party misuse); and (iii) even cases in which the central defendant (Health Gorilla) is absent altogether. Under these circumstances, any purported commonality is weaker than in *Accellion* and insufficient to justify centralization.

Moreover, Defendant's prediction of duplicative discovery is overstated. Mot. at 6, 9, 11, 13, 14. Discovery concerning Health Gorilla's policies, onboarding practices, and response to the alleged events is already centralized in the consolidated *Lott* action. By contrast, discovery relating to hospitals, Epic, and other entities, as discussed above, will be unique to those defendants and would not be duplicative even in an MDL proceeding. To the extent any overlap exists, courts routinely address it through coordinated discovery orders, cross-use agreements, and other informal mechanisms. Section 1407 centralization is therefore unnecessary to avoid duplication.

Finally, far from promoting efficiency, centralization would complicate this litigation. Without an MDL, the consolidated *Lott* action will proceed against Health Gorilla, while separate actions proceed against hospitals and Epic based on their own conduct. Centralization would instead import additional defendants, distinct legal theories, and individualized discovery tracks into a single proceeding, transforming a streamlined action into a sprawling, multi-defendant MDL. Section 1407 is intended to reduce complexity—not create it.

13

D.    **Clear Alternatives to Centralization Exist.**

The Panel has consistently held that a Section 1407 transfer "should be the last solution that parties seek after considered review of all other options." *In re Best Buy Co.*, 804 F. Supp. 2d at 1378-79 (collecting cases). Accordingly, this Panel routinely denies centralization where, as here, less complicated measures exist and would suffice, including coordinated discovery orders, master discovery protocols, cross-use agreements, and other informal mechanisms. *See, e.g.*, *In re RBS Securities, Inc.*, 579 Fed. App'x 636, 637 (10th Cir. 2014).

As in *Accellion*, *RBS Securities*, *CP4 Fuel Pump*, and similar cases, any discovery relating to Health Gorilla can be coordinated informally and/or through coordinated discovery orders without transforming these distinct, defendant-specific actions into a single MDL. Including such cases in a centralized proceeding would complicate, protract, and expand—rather than streamline—the litigation, contrary to the purposes of Section 1407.

II.    **IF THE PANEL GRANTS THE MOTION, PLAINTIFF AGREES CENTRALIZATION SHOULD OCCUR IN THE SOUTHERN DISTRICT OF FLORIDA.**

However, in the event that the Panel is inclined to grant the Motion, Plaintiff agrees with Defendant that centralization should occur in the Southern District of Florida before the Honorable K. Michael Moore, where the consolidated case against Health Gorilla is pending, and where Defendant is headquartered. With the plurality of the Related Actions filed in the Southern District of Florida, and a substantial part of the events giving rise to Plaintiff's claims arising in Florida, key witnesses and documents are likely to be found there. Lastly, as a major air hub and international business destination, travel to and from the Southern District of Florida, when needed, is easily accomplished.  Moreover, Judge Moore understands the relevant legal and factual issues and is well-suited to preside over any centralized proceeding.

**CONCLUSION**

"The most pressing question" before this Panel "is whether centralization presents the most efficient means of advancing these actions towards resolution." *In re Hartford COVID-19 Bus. Interruption Prot. Ins. Litig.*, 493 F. Supp. at 1360. Here, the answer to that question is no. The Panel should therefore deny Defendant's Motion. In the alternative, if the Motion is granted, Plaintiffs respectfully request the cases be transferred to the Southern District of Florida.

Dated: June 22, 2026

Respectfully submitted,

By: */s/ Kara Kapp*
Kara Kapp
**MILBERG PLLC**
5335 Wisconsin Ave. NW, Suite 440
Washington, DC 20015
Tel: (516) 620-4219
kkapp@milberg.com

*Counsel for Plaintiff Holly Hughes (Hughes v. Health Gorilla, Inc.,* No. 1:26-cv-21952-KMM (S.D. Fla.))

15