**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: Health Gorilla, Inc., et al., Data Security Breach Litigation** | **MDL No. 3193** |

This Document Relates To:

***Epic Systems Corporation, et al. v. Health Gorilla, Inc., et al.***
Case No. 2:26-cv-00321-FMO-RAO (C.D. California)

# PLAINTIFFS EPIC SYSTEMS CORPORATION, OCHIN, INC., REID HOSPITAL & HEALTH CARE SERVICES, INC., TRINITY HEALTH CORPORATION, AND UMASS MEMORIAL HEALTH CARE, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-1)

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT....................1

ARGUMENT....................1

A. Health Gorilla's Opposition Is Inconsistent With Its Prior Position Opposing Inclusion of the Fraud Action in the MDL....................1

B. Transfer of the Fraud Action Violates the Law of the Case....................3

C. The Common Questions are Minimal and Overshadowed....................5

D. Transfer Will Not Serve the Convenience of the Parties and the Witnesses and Will Not Serve the Just and Efficient Conduct of the Litigations....................8

CONCLUSION....................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Medi-Cal Reimbursement Rate Reduction Litig.*,
652 F. Supp. 2d 1378 (J.P.M.L. 2009)....................8

*In re Pork Antitrust Litig.*,
2021 WL 5310590 (D. Minn. Nov. 12, 2021)....................3

*In re Regents of Univ. of California*,
964 F.2d 1128 (Fed. Cir. 1992)....................3, 4

*In re SFPP, LP., R.R. Prop. Rights Litig.*,
121 F. Supp. 3d 1360 (J.P.M.L. 2015)....................8

*In re Supp. Nutrition Assist. Prog. Litig.*,
619 F. Supp. 3d 1348 (J.P.M.L. 2022)....................7

**Statutes**

28 U.S.C. § 1407....................3, 5, 7

**Other Authorities**

Fed. R. Civ. P. 42....................3, 4

## PRELIMINARY STATEMENT

Health Gorilla's Opposition is surprising. After all, it was Health Gorilla that initiated this MDL and expressly excluded the Fraud Action from it. And it was Health Gorilla that, two months ago, told this Panel that the Fraud Action had no place in the MDL because it "is not a data breach class action" and is "entirely separate" from those actions. Perhaps more startling than its strategic maneuvering is that Health Gorilla does not even attempt to reconcile its completely inconsistent positions. Instead, the Opposition attempts to roll out like a foregone conclusion why the Panel should transfer the Fraud Action to the MDL and, in doing so, fails to refute (and thus, concedes) numerous of the arguments put forth by Plaintiffs for why transfer is inappropriate here.

The Panel should not accept Health Gorilla's shapeshifting and should vacate the CTO. That outcome avoids unnecessarily disrupting an action that is well underway and involves myriad different parties and distinct factual issues. It also prevents complicating the Data Security Breach Actions with irrelevant fact issues and unnecessary parties. Finally, this result comports with Judge Olguin's prior refusal to relate one of the Data Security Breach Actions to the Fraud Action.

## ARGUMENT

### A. Health Gorilla's Opposition Is Inconsistent With Its Prior Position Opposing Inclusion of the Fraud Action in the MDL.

Health Gorilla initiated this MDL by moving to transfer 10 data breach actions to the Southern District of Florida. *See* MDL Dkt. No. 1. ***The Fraud Action was not one of them***. That was logical given the minor overlap in parties and the distinct factual issues presented by the Data Security Breach Actions. Indeed, in its motion, Health Gorilla described the common fact questions to the Data Security Breach Actions as: whether Health Gorilla granted third-parties unauthorized access to class members' patient records; whether class members' personal

information was accessed without authorization; whether Health Gorilla owed a duty to class members to exercise reasonable care in obtaining, securing, protecting, and safeguarding their patient records; whether Health Gorilla breached that duty; Health Gorilla's investigation and response to the unauthorized access; whether Health Gorilla owed a duty to class members to detect and prevent improper access to and misuse of class members' records; whether Health Gorilla breached that duty; whether class members suffered legally cognizable damages; the amount of class members' harm; and whether class members are entitled to injunctive or declaratory relief. *See* MDL Dkt. No. 1-1 at 7-8. Only two of these 10 questions are relevant to the Fraud Action: whether Health Gorilla granted third-parties unauthorized access to patient records and Health Gorilla's investigation and response to this unauthorized access.

Health Gorilla's counsel also lobbied hard against the inclusion of the Fraud Action in the MDL during the hearing on its motion. When asked if the Fraud Action should be included in the MDL, Health Gorilla's counsel urged not: the Fraud Action is "separate . . . ***[T]hat action is not a data breach class action***. That action is addressing business issues and allegations of violations in a different context." Baker Decl. in Supp. of Reply, Ex. 33 (Tr. of July 30 Hearing) at 5:19-6:10. Health Gorilla's counsel doubled down when asked about the potential for overlapping discovery, arguing that there was not overlapping discovery because the Fraud Action and the Data Security Breach Actions are "***entirely different causes of action*** . . . [T]hose are the entities disputing who did what and who allegedly violated contract terms, as opposed to the data breach class actions asserting you accessed my data. They're entirely ***different populations*** . . . ***[T]he causes of action are entirely separate***." *Id.* at 6:14-7:6.

Health Gorilla's Opposition appears to be an opportunistic attempt to delay the Fraud Action with a late-breaking transfer order. Respectfully, the Panel should not permit it.

**B. Transfer of the Fraud Action Violates the Law of the Case.**

Health Gorilla cannot evade Judge Olguin's Order holding that the Fraud Action and *Patterson* data breach action cannot be related because they do not "call for the determination of substantially similar or related questions of law or fact" and "the factual circumstances and defenses [between the actions] will necessarily be different." Baker Decl. in Supp. of Mot., Ex. 2 (*Patterson* Order) at 2.

Health Gorilla argues that this Order is irrelevant because Judge Olguin was not deciding Section 1407 consolidation, but Rule 42 relatedness. Opp'n at 18. This is a distinction without a difference. Rule 42 applies when actions are pending before the same court. Section 1407 applies when actions are pending before different courts. But both require answering the same questions: Do the Fraud Action and the Data Security Breach Actions involve common questions of fact and will pretrial consolidation serve the just and efficient conduct of the litigations? Judge Olguin answered those questions in the negative and his Order is law of the case.[1] Health Gorilla cannot credibly argue that Judge Olguin's "finding that two cases have different factual circumstances and defenses," *see* Opp'n at 19, is irrelevant to the questions before this Panel.

Health Gorilla argues that *In re Regents of Univ. of California*, 964 F.2d 1128 (Fed. Cir. 1992) instructs that cases can be consolidated under Section 1407 despite an order like Judge Olguin's. Opp'n at 19. Health Gorilla misconstrues *Regents*. In *Regents*, the district court found that "the common elements of the two cases" were insufficient to relate the actions pursuant to California Local Rule 205-2 "***for trial***." *Regents*, 964 F.2d at 1133 (emphasis added). But the

---

[1] Plaintiffs did not cite *In re Pork Antitrust Litig.*, 2021 WL 5310590, at *3 (D. Minn. Nov. 12, 2021) for the contention that Judge Olguin's Order "bind[s] the Panel on a subsequent Section 1407 centralization decision," as Health Gorilla contends. *See* Opp'n at 19. Rather, Plaintiffs cited *Pork Antitrust Litig.* for the undisputed proposition that Rule 42 and Section 1407 "serve substantially identical purposes in case management of related cases." *Id.*; *see also* Mot. at 9-10.

district court also found that "that [the common elements] were nevertheless sufficient to cause inconsistent and duplicative pretrial demands on parties and witnesses" such that "the court ordered that discovery in these California actions would be handled by the same magistrate." *Id.* Thus, not only did *Regents* not address a Rule 42 order at all, but it also did not present the same law of the case issue present here. In *Regents*, the Panel's decision to centralize the underlying cases was *consistent with* the district court's order relating the actions for discovery purposes. *Id.* But here, an order transferring the Fraud Action would be inconsistent with, and require reversal of, Judge Olguin's Order. Baker Decl. in Supp. of Mot., Ex. 2 (*Patterson* Order) at 2.

Nor does Health Gorilla identify extraordinary circumstances that warrant revisiting Judge Olguin's Order. Health Gorilla vaguely contends, without any attribution or explanation, that it has learned purportedly "new" information related to Epic's "knowledge of the facts underlying its claims." Opp'n at 20. Plaintiffs and the Panel are left to guess at what those facts are, since Health Gorilla does not provide them. No such facts have been adduced in discovery. The Opposition otherwise refers to Health Gorilla's alleged new discovery that Epic knew of the network queries that its lawsuit addresses as early as October 2023. *Id.* at 2. But that cannot be it, as Plaintiffs' ***Complaint*** in the Fraud Action identifies activity from October 2023. That activity, as clearly alleged in the Complaint, could not possibly serve as the basis for an unclean hands or estoppel defense because it does not show, much less even suggest, that Epic delayed in asserting its claims or acted unfairly. *See* Plaintiffs' Compl. ¶¶ 132, 178, 180.

At a minimum, if Health Gorilla seeks to undo Judge Olguin's Order based on some changed circumstances, it should have taken the time to articulate the change. Because Health Gorilla failed to do so, the Panel should not deviate from the Order.

### C. The Common Questions are Minimal and Overshadowed.

Turning to the Section 1407 factors, Health Gorilla overstates the factual overlap present and ignores the distinct factual questions that differentiate the Fraud Action from the Data Security Breach Actions. To use Health Gorilla's MDL counsel's own words: the Fraud Action "is not a data breach class action" and involves "allegations of violations in a different context." Baker Decl. in Supp. of Reply, Ex. 33 (Tr. of July 30 Hearing) at 5:19-6:10.

Critically, Health Gorilla does not address—let alone dispute—that (1) the Data Security Breach Actions turn on unique fact questions related to access to putative class members' data, individual patient injuries, injury causation, and arbitration agreements, among others; (2) all fact questions related to the conduct of Trinity, University of Illinois, and University of Virginia are unique to the Data Security Breach Actions; and (3) all fact questions related to the 17 parties to the Fraud Action who are not parties to the Data Security Breach Actions are unique to the Fraud Action. *Compare* Mot. at 11-12, *with* Opp'n at 8-14. Nor does Health Gorilla address that the common questions it identified in moving to create the MDL, and those identified by the Panel in granting Health Gorilla's motion, demonstrate that the Fraud Action is materially different from the Data Security Breach Actions. *Compare* Mot. at 13-14, *with* Opp'n at 8-14. Instead, Health Gorilla pivots to articulate new common questions of fact. Its arguments are unavailing.

**Fact Questions Related to Epic's Knowledge and Conduct Are Hypothetical and Unique.** Health Gorilla's argument is entirely hypothetical. It has not brought any defenses or counterclaims, and the Panel should not base its decision on unstated claims or defenses. Opp'n at 9-10. Even assuming Health Gorilla's defenses or counterclaims were actually asserted, Health Gorilla dramatically overstates their relevance to whether transfer is appropriate, as questions related to Health Gorilla's conduct are only superficially similar and questions related to Epic's

knowledge are limited. Indeed, while there may be questions about Epic's conduct in the Fraud Action and the Data Security Breach Actions, the precise conduct at issue differs. The relevant conduct of Epic in the Data Security Breach Actions relates to data safeguards, security controls, and breach notifications. *See* Mot. at 11. This is not relevant to the Fraud Action.

Health Gorilla also references its discovery in the Fraud Action, highlighting a single document request seeking documents about whether Epic is "effectively acting as a litigation funder for federal litigation that materially breaches [the framework agreements]." Opp'n at 3 n.3. Not only is that claim wildly erroneous, that kind of discovery, as improper and irrelevant as it is in the Fraud Action, has nothing to do with the Data Security Breach Actions. And Health Gorilla's decision to focus on such irrelevant discovery reveals the weakness of its claims and the true nature of its motives, both here and in the Fraud Action.

The two fact questions Health Gorilla cites related to Epic are limited, not complex, not germane to other parties, and easily addressed by informal coordination. *See* Opp'n at 9-10.

**Fact Questions Related to Health Gorilla's Knowledge and Conduct are Nuanced.** There is some overlap in fact questions related to Health Gorilla's conduct allowing its customers to use the frameworks for impermissible purposes and its knowledge. But these questions differ when examined more closely, including what "impermissible purpose" is at issue and what knowledge is relevant. *See* Mot. at 13-14. Health Gorilla's Opposition does not contend with these differences. *See* Opp'n at 10-11.

**Fact Questions Related to Attribution, Access Logs, and Downstream Use Do Not Overlap.** Health Gorilla next contends that there are common fact questions related to (a) access logs identifying what queries were made, by whom, and when and (b) downstream use of patient records. *See* Opp'n at 11-13. Not so fast. The Fraud Action depends on identifying fraudulent

queries made by the Defendants, falsely asserting a treatment purpose—queries that are not necessarily related to unauthorized access to a particular putative class member's patient record. The Data Security Breach Actions turn more generally on identifying unauthorized access to putative class members' patient records—whether or not a Plaintiff or Defendant beyond Health Gorilla was involved. These are not the same questions and answering one question does not resolve the other.

For the same reason, fact questions related to downstream use do not sufficiently overlap and Health Gorilla's reliance on the generic "relevance" of "downstream use" is insufficient. Here, Health Gorilla understates the core of the Fraud Action and importance of its scheme allegations. The Fraud Action will necessarily entail a fact-specific inquiry regarding the Fraud Action Defendants' access to the frameworks and their use of records obtained from the frameworks for purported "treatment purposes." It is simply wrong to relabel this as a "downstream use" issue that is relevant to both the Data Security Breach Actions and the Fraud Action, particularly given the Data Security Breach Actions are focused generally on allegations of impermissible access to putative class members' records, not on the Fraud Action Defendants' treatment-based queries.

**Legal Questions Related to Statutory and Contractual Interpretation Are Irrelevant.** Health Gorilla contends there are common legal questions related to HIPAA and the framework agreements, including the meaning of "treatment," whether Plaintiffs were required to bring their disputes to Carequality and the RCE, and whether the framework rules were violated. *See* Opp'n at 12-14. To be sure, Health Gorilla's contention that Plaintiffs were required to assert their claims to Carequality and the RCE is not just wrong, it is irrelevant in the Data Security Breach Actions.

In addition, Section 1407 looks at ***factual*** questions—not ***legal*** ones. "Common legal questions are insufficient to satisfy Section 1407's requirement of common factual questions." *In*

*re Supp. Nutrition Assist. Prog. Litig.*, 619 F. Supp. 3d 1348, 1348 (J.P.M.L. 2022) (denying consolidation where "[t]he principal common questions" were "legal rather than factual"); *see also In re SFPP, LP., R.R. Prop. Rights Litig.*, 121 F. Supp. 3d 1360, 1361 (J.P.M.L. 2015) ("[s]eeking a uniform *legal* determination . . . generally is not a sufficient basis for centralization") (emphasis in original); *In re Medi-Cal Reimbursement Rate Reduction Litig.*, 652 F. Supp. 2d 1378, 1378 (J.P.M.L. 2009) (similar).

### D. Transfer Will Not Serve the Convenience of the Parties and the Witnesses and Will Not Serve the Just and Efficient Conduct of the Litigations.

Health Gorilla fails to address numerous factors that this Panel must evaluate when determining whether the just and efficient conduct of the litigation will be furthered by transfer and which weigh against transfer here. *Compare* Mot. at 15-20, *with* Opp'n at 14-18. Health Gorilla does not dispute that (1) transfer risks delaying the Fraud Action; (2) Plaintiffs oppose transfer; (3) the parties and claims are distinct; (4) the risk of inconsistent pretrial rulings is miniscule; and (5) informal consultation and cooperation are sufficient to minimize any slight overlaps in discovery or minimal possibility of conflicting pretrial rulings. *Compare* Mot. at 15-20, *with* Opp'n at 14-18. By failing to address these issues, Health Gorilla concedes them.

Health Gorilla advances only three arguments: (1) while the parties and claims are different, common evidence apparently remains; (2) Health Gorilla's principal place of business is in Florida and the non-Florida parties and witnesses do not need to travel there; and (3) the Fraud Action can be put on a separate track for discovery and motion practice, as well as remanded earlier. *See* Opp'n at 15-18.

**The Parties, Claims, and Relief Are Distinct.** Health Gorilla concedes that the parties and claims are distinct. *See* Opp'n at 15-16. Health Gorilla argues this does not militate against

transfer (despite clear case law to the contrary, *see* Mot. at 16 (collecting cases)) because "entity-specific discovery" can "proceed separately." Opp'n at 15-16. Of course, there is no reason to transfer the Fraud Action into the MDL only for it to "proceed separately" with discovery.[2]

Health Gorilla also argues that the relief sought in the actions "overlap[s]." Opp'n at 13. But Plaintiffs seek an injunction barring Defendants from participating in the frameworks and using any fraudulently obtained patient records. In the Data Security Breach Actions, the putative classes seek monetary damages and injunctions requiring certain security measures and disclosures related to the alleged breaches. *See* Mot. at 17. While both seek destruction of improperly obtained records, these requests differ, contrary to Health Gorilla's contention. *See* Opp'n at 13. Plaintiffs seek destruction of *any* patient records *improperly obtained by Defendants*, regardless of *whose* records they are. The putative classes in the Data Security Breach Actions seek destruction only of *the class members'* patient records that were disclosed without authorization. The relief sought is distinct and weighs against transfer.

**The Location of Health Gorilla's Headquarters and Ability to Participate Without Travel is Insufficient.** Health Gorilla next argues that transferring the Fraud Action to the MDL is "collective[ly]" convenient because Health Gorilla's principal place of business is in Florida and the non-Florida parties and witnesses do not need to travel to Florida. *See* Opp'n at 16-17. But the fact that it is based in Florida does not outweigh that the remaining parties (and numerous third-party witnesses) are not based in or tethered to Florida. Nor does Health Gorilla's argument that parties and witnesses might be able to participate in the MDL without traveling to Florida make transfer convenient. *See id.* at 16. This is insufficient to warrant transfer. *See* Mot. at 15-19.

[2] Health Gorilla also hypothesizes that discovery related to the 17 unique parties in the Fraud Action "may be relevant" to the Data Security Breach Action, citing an unexplained example of "a provider's disclosures." Opp'n at 15.

**The Fraud Action's Advanced Procedural Posture Weighs Against Transfer.** Health Gorilla mischaracterizes the posture of the Fraud Action in an attempt to compel transfer. *See* Opp'n at 17-18; *see also id.* at 4, 8. While motions to dismiss are pending, Health Gorilla ignores that discovery is well underway. For example, Health Gorilla claims only two parties had produced documents at the time of Plaintiffs' motion filing. *Id.* at 8. But the Mammoth Defendants, the RavillaMed Defendants, the Unit 387 Defendants, and Defendant Daniel Baker, as well as former Defendants GuardDog and SelfRx, all made document productions prior to Plaintiffs' filing, as have numerous third parties. (Health Gorilla also argues that the parties have not negotiated custodians or search terms, as though such negotiations are necessary or even likely to happen. *Id.* at 8, 17. That might be Health Gorilla's assumption, but it is not Plaintiffs' position and it is not at all relevant to the Panel's decision.) The advanced discovery of the Fraud Action and the pending motions to dismiss renders the Fraud Action significantly further along than the Data Security Breach Actions. This weighs against transfer. *See* Mot. at 17-18 (collecting cases).

Finally, Health Gorilla argues that even if the Fraud Action is farther along procedurally (and it is), it can be put on a "separate track[] for discovery [and] motion practice," as well as "remanded earlier." Opp'n at 17 (quoting *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1376 (J.P.M.L. 2021). Again, there is no reason to upend the Fraud Action by transferring it into the MDL only for it to proceed on an entirely different track from the Data Security Breach Actions.[3]

## CONCLUSION

In light of the foregoing, and as further detailed in Plaintiffs' Motion, Plaintiffs respectfully request that the Conditional Transfer Order (CTO-1) be vacated.

[3] Health Gorilla also argues that the judgment entered against GuardDog is not a reason to vacate the transfer. *See* Opp'n at 18. But Plaintiffs never made that argument.

Dated: September 29, 2026

Respectfully submitted,

*/s/ Marshall L. Baker*
Marshall L. Baker (Cal. Bar No. 300987)
mbaker@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone: 310.229.1000
Facsimile: 310.229.1001

- and -

Anthony T. Pierce (D.C. Bar No. 415263)
apierce@akingump.com
**AKIN GUMP STRAUSS HAUER & FELD LLP**
Robert S. Strauss Tower
2001 K Street, N.W.
Washington, DC 20006-1037
Telephone: 202.887.4000
Facsimile: 202.887.4288

*Counsel for Plaintiffs*
*Epic Systems Corporation, OCHIN, Inc.,*
*Reid Hospital & Health Care Services, Inc. d/b/a*
*Reid Health, Trinity Health Corporation, and*
*UMass Memorial Health Care, Inc.*